**<u>EXHIBIT A</u>**

SECURITIES LENDING AGREEMENT ("Lending Agreement"), dated as of June 19, 2002 between Imperial County Employees' Retirement System ("Lender"), having its principal place of business at 940 Main Street, Suite 105, El Centro, California 92243 and JPMorgan Chase Bank ("Bank"), having its principal place of business at 270 Park Avenue, New York, New York 10017-2070.

It is hereby agreed as follows:

Section 1 - Definitions

Unless the context clearly requires otherwise, the following words shall have the meanings set forth below when used herein:

a) "Account" shall mean the securities account established and maintained by Bank on behalf of Lender pursuant to a separate agreement ("Agreement"), dated as of 4-1-89, between Bank and Lender, which Agreement provides, inter alia, for the safekeeping of Securities received by Bank from time to time on behalf of Lender.

b) "Agreement" shall have the meaning assigned thereto in the definition of Account.

c) "Authorized Investment" shall mean any type of instrument, security, participation or other property in which Cash Collateral may be invested or reinvested, as described in Section 5(e) hereof and Appendix 1 hereto (and as such Appendix may be amended from time to time by written agreement of the parties).

d) "Authorized Person" shall mean, except to the extent that Bank is advised to the contrary by Proper Instruction, any person who is authorized to give instructions to Bank pursuant to the Agreement and any mandates given to Bank in connection with such Agreement. An Authorized Person shall continue to be so until such time as Bank receives Proper Instructions that any such person is no longer an Authorized Person.

e) "Borrower" shall mean an entity listed on Appendix 2 hereto other than any entry which Bank shall have been instructed to delete from such list pursuant to Written Instructions and as such Appendix may be amended in accordance with Section 4(b) hereof.

f) "Business Day" shall have the meaning assigned thereto in the applicable MSLA, including any applicable Addendum or Exhibit and shall, include, as applicable, a New York Business Day and a Foreign Business Day.

g) "Cash Collateral" shall mean fed funds and such U.S. and non-U.S. currencies as may be pledged by a Borrower in connection with a particular Loan.

h) "Collateral" shall mean the types of collateral acceptable to Lender as set forth in Appendix 3 hereto, together with Cash Collateral.

i) "Collateral Account" shall mean, as the case may be, an account maintained by Bank with itself, with any Depository or with any Triparty Institution and designated as a Collateral Account for the purpose of holding any one or more of Collateral, Authorized Investments, and Proceeds in connection with Loans hereunder.

j) "Collateral Amount" shall have the meaning assigned thereto in Section 5(c) hereof.

k) "Collateral Requirement" shall have the meaning assigned thereto in Section 5(c) hereof.

261380:v16

l) "Depository" shall mean: (i) The Depository Trust Company, and any other securities depository or clearing agency (and each of their respective successors and nominees) registered with the U.S. Securities and Exchange Commission or registered with or regulated by the applicable foreign equivalent thereof or otherwise able to act as a securities depository or clearing agency; (ii) any transnational depository; (iii) the Federal Reserve book-entry system for the receiving and delivering of U.S. Government Securities, and (iv) any other national system for the central handling of that country's government securities.

m) "Distributions" shall have the meaning assigned thereto in Section 3(b)(v) hereof.

n) "Dollars" shall have the meaning assigned thereto in Section 5(c) hereof.

o) "Letter of Credit", to the extent acceptable to Lender as Collateral in accordance with Appendix 3 hereto, shall have the meaning assigned thereto in the applicable MSLA and be issued by a bank listed on Appendix 4 hereto (as such list may be amended by Bank from time to time on notice to Lender to add one or more banks), other than a bank deleted from such list pursuant to Written Instruction or by Bank.

p) "Loan" shall mean a loan of Securities hereunder and under the applicable MSLA.

q) "Loan Fee" shall mean the amount payable by a Borrower to Bank pursuant to the applicable MSLA in connection with Loans collateralized other than by Cash Collateral.

r) "Market Value" shall have the meaning assigned thereto in Section 7(c)(iii) hereof.

s) "MSLA" shall mean a master securities lending agreement or securities borrowing agreement between Bank and a Borrower, pursuant to which Bank lends securities on behalf of its customers (including Lender) from time to time. A copy of Bank's standard forms of MSLA, including (as applicable) the international addendum thereto, are annexed (i) as Appendix 5A in the case of borrowers located in the United States, and (ii) as Appendix 5B in the case of affiliated borrowers of Bank that are covered by PTE 99-34 and are located outside the United States. (The location of each Borrower is indicated in Appendix 2.)

t) "Non-U.S. Securities" shall mean Securities other than "U.S. Securities" as defined below, and shall include Global Depositary Receipts.

u) "Oral Instructions" shall have the meaning assigned thereto in Section 10 hereof.

v) "Proceeds" shall mean interest, dividends and other payments and Distributions received by Bank in connection with Authorized Investments.

w) "PTE 99-34" shall mean Department of Labor Prohibited Transaction Exemption 99-34 granted to Bank on August 25, 1999.

x) "Proper Instructions" shall mean Oral Instructions and Written Instructions.

y) "Rebate" shall mean the amount payable by Bank on behalf of Lender to a Borrower in connection with Loans collateralized by Cash Collateral, which shall be a percentage of the Cash Collateral as agreed by the Borrower and Bank.

z) "Return Date" shall have the meaning assigned thereto in Section 7(c)(i) hereof.

aa) "Securities" shall mean government securities (including U.S. Government Securities), equity securities, bonds, debentures, other corporate debt securities, notes, mortgages or other obligations, and any certificates, warrants or other instruments representing rights to receive, purchase, or subscribe for the same, or evidencing or representing any other rights or interests therein and held pursuant to the Agreement.

bb) "Term Loan" shall have the meaning assigned thereto in Section 5(h) hereof.

cc) "Triparty Institution" shall mean a financial institution with which Bank shall have previously entered a triparty agreement among itself, such Triparty Institution and a particular Borrower providing, among other things, for the holding of Collateral in a Collateral Account at such Triparty Institution in Bank's name on behalf of Bank's lending customers and for the substitution of Collateral; provided, however, that any substituted Collateral shall meet the then standards for acceptable Collateral set by Bank.

dd) "U.S. Government Securities" shall mean book-entry securities issued by the U.S. Treasury (as defined in Subpart O of Treasury Department Circular No. 300 and any successor provisions) and any other securities issued or fully guaranteed by the United States government or any agency, instrumentality or establishment of the U.S. government, including, without limitation, securities commonly known as "Ginnie Maes," "Sally Maes," "Fannie Maes" and "Freddie Macs".

ee) "U.S. Securities" shall mean Securities issued by an issuer that is organized under the laws of the United States or any State thereof or that are otherwise traded in the United States, and shall include American Depositary Receipts.

ff) "Written Instructions" shall have the meaning assigned thereto in Section 10 hereof.

<u>Section 2 - Appointment. Authority</u>

(a) <u>Appointment</u>. Lender hereby appoints Bank as its agent to lend Securities in the Accounts on Lender's behalf on a fully disclosed basis to Borrowers from time to time in accordance with the terms hereof and on such terms and conditions and at such times as Bank shall determine and Bank may exercise all rights and powers provided under any MSLA as may be incidental thereto, and Bank hereby accepts appointment as such agent and agrees to so act.

(b) <u>Authority</u>. Lender hereby authorizes and empowers Bank to execute in Lender's name and on its behalf and at its risk all agreements and documents as may be necessary to carry out any of the powers herein granted to Bank. Lender grants Bank the authority set forth herein notwithstanding its awareness that Bank, in its individual capacity or acting in a fiduciary capacity for other accounts, may have transactions with the same institutions to which Bank may be lending Securities hereunder, which transactions may give rise to actual or potential conflict of interest situations. Bank shall not be bound to: (i) account to Lender, to the maximum extent permitted under the Employee Retirement Income Security Act of 1974, as amended, and the regulations thereunder, for any sum received or profit made by Bank for its own account or the account of any other person or (ii) disclose or refuse to disclose any information or take any other action if the same would or might in Bank's judgment, made in good faith, constitute a breach of any law or regulation or be otherwise actionable with respect to Bank; provided that, in circumstances mentioned in (ii) above, Bank shall promptly inform Lender of the relevant facts (except where doing so would, or might in Bank's judgment, made in good faith, constitute a breach of any law or regulation or be otherwise actionable as aforesaid).

Section 3 - Representations and Warranties

(a) Representations of each party. Each party hereto represents and warrants to the other that: (i) it has the power to execute and deliver this Lending Agreement, to enter into the transactions contemplated hereby, and to perform its obligations hereunder; (ii) it has taken all necessary action to authorize such execution, delivery, and performance; (iii) this Lending Agreement constitutes a legal, valid, and binding obligation enforceable against it; and (iv) the execution, delivery, and performance by it of this Lending Agreement shall at all times comply with all applicable laws and regulations.

(b) Representations of Lender. Lender represents and warrants to Bank that: (i) this Lending Agreement is, and each Loan shall be, legally and validly entered into, and does not and shall not violate any statute, regulation, rule, order or judgment binding on Lender, or any provision of Lender's charter or by-laws, or any agreement binding on Lender or affecting its property; (ii) the person executing this Lending Agreement and all Authorized Persons acting on behalf of Lender has and have been duly and properly authorized to do so; (iii) it is lending Securities as principal and shall not transfer, assign or encumber its interest in, or rights with respect to, any Securities available for Loan hereunder; (iv) it is the beneficial owner of all Securities or otherwise has the right to lend Securities; (v) it is entitled to receive all interest, dividends and other distributions (including, but not limited to, payments made by the depositary in connection with American Depositary Receipts and Global Depositary Receipts) ("Distributions") made by the issuer with respect thereto; and (vi) it has total assets with an aggregate market value of at least $50 million. Lender shall promptly identify to Bank by notice, which notice may be oral, any Securities that are no longer subject to the representations contained in (b)

Section 4 - Borrowers

(a) MSLAs. Lender hereby acknowledges receipt of the forms of MSLA and authorizes Bank to lend Securities in the Account to Borrowers thereunder pursuant to an agreement substantially in the form thereof.

(b) Borrowers. Securities may be lent to any Borrower listed in Appendix 2, as such Appendix may be updated from time to time to add new Borrowers and to delete entities that have ceased to be potential Borrowers. Bank shall provide Lender with notice of each addition of a Borrower to such list. If Lender notifies Bank in writing within five Business Days from the date of any such notice that it objects to a potential Borrower, no Loans of Securities shall be made to such potential Borrower. If Lender does not so object within such five Business Day period, each potential Borrower notified to Lender by Bank shall be deemed acceptable to Lender.

Section 5 - Loans

(a) Securities to be lent. Lending opportunities. Loan initiation. All Securities of Lender held by Bank that are issued, settled or traded in the markets that have been approved by Bank from time to time for purposes of Bank's discretionary securities lending program shall be subject to the terms hereof. Bank shall seek to assure that Lender receives a fair allocation of lending opportunities vis-à-vis other lenders, taking into account the demand for and availability of Securities, types of Collateral, eligibility of Borrowers, limitations on investments of Cash Collateral, tax treatment, and similar commercial factors. From time to time, Bank may lend to Borrowers Securities held in the Account (except Securities that Lender has notified to Bank are unavailable or Securities that are no longer subject to the representations set forth in Section 3) and shall deliver such Securities against receipt of Collateral in accordance with the applicable MSLA. Bank shall have the right to decline to make any Loans to any Borrower and to discontinue lending to any Borrower in its sole discretion and without notice to Lender.

(b) Receipt of Collateral. Collateral substitution. For each Loan, Bank shall receive and hold Letters of Credit received as Collateral and Bank or a Triparty Institution shall receive and hold all other Collateral required by the applicable MSLA in a Collateral Account, and Bank is hereby authorized and directed, without obtaining any further approval from Lender, to invest and reinvest all or substantially all Cash Collateral. Bank shall credit, or where applicable shall have a Triparty Institution credit, all Collateral, Authorized Investments and Proceeds to a Collateral Account and Bank shall mark its books and records to identify Lender's interest therein, it being understood, however, that all monies credited to a Collateral Account may for purposes of investment be commingled with cash collateral held for other lenders of securities on whose behalf Bank may act. Bank may, in its sole discretion, liquidate any Authorized Investment and credit the net proceeds to a Collateral Account. Bank shall accept substitutions of Collateral in accordance with the applicable MSLA, and shall credit, or where applicable shall have a Triparty Institution credit, all such substitutions to a Collateral Account.

(c) Mark to market procedures. (i) Bank shall require initial Collateral for a Loan in an amount determined by applying the then applicable "Collateral Requirement" (as defined below) to the Market Value of the Security that is the subject of the Loan together with, in the case of fixed income Securities, any accrued but unpaid interest thereon. The "Collateral Requirement" with respect to a given Security shall be an amount equal to the then applicable percentage (currently 102% where securities and the collateral therefor are denominated in the same currency, and 105% for all other securities) of the Market Value of the Security which is the subject of a Loan as determined as of the close of trading on the preceding Business Day; provided, however, that with respect to Securities such as U.S. Treasury strips and bills, where the market functions to not allow for the sale of such Securities at greater than par, the Collateral Requirement shall equal the lesser of 100% of the par value of the Security or 102% of its Market Value. (ii)(A) With respect to each Loan of Securities denominated in U.S. dollars ("Dollars") if, and only if, the aggregate Market Value of the Collateral held by Bank on behalf of Lender for such Loan on any Business Day is less than the aggregate Market Value of the Securities which are the subject of such Loan (together with accrued but unpaid interest in the case of fixed income Securities, but exclusive of any diminution in the value of Cash Collateral investments), Bank shall demand on behalf of Lender that the Borrower, shall provide additional Collateral in accordance with the applicable MSLA. Such additional Collateral demanded, together with the Collateral then held by Bank on behalf of Lender for such Loan, shall be not less than the applicable Collateral Requirement. (B) With respect to all Loans of Securities denominated other than in Dollars from all lenders to a given Borrower, each Business Day Bank shall determine if the Market Value of all Collateral received by Bank from that Borrower in connection with all such Loans is at least equal to the aggregate amount ("Collateral Amount") determined by applying the applicable Collateral Requirement to each Security denominated other than in Dollars on Loan to such Borrower from all lenders. If the Market Value of the Collateral held for any individual Security falls below the Market Value of such Security, or if the Market Value of all Collateral received from a given Borrower in respect of such Loans is not at least equal to the Collateral Amount, Bank shall demand on behalf of Lender that Borrower shall provide additional Collateral in accordance with the applicable MSLA so as to meet the Collateral Amount by marking specific Loans. In respect of the forgoing, additional Collateral shall not be demanded to the extent that a Collateral shortfall is on account of a diminution in the value of Cash Collateral investments. In accordance with general market practice, the Market Value of certain Securities (including, without limitation, U.S. Government Securities), whether on Loan or received as Collateral, may be determined on a same day basis by reference to recognized pricing services. Bank may from time to time establish de minimis guidelines with respect to Collateral pursuant to which a mark would not be made even where otherwise required hereunder.

(d) Changes in procedures applicable to Collateral. The Collateral procedures set forth in Sections 5(b)-(c) above reflect Bank's current practice and may be changed by Bank from time to time based on general market conditions (including volatility of Securities on Loan and of securities Colla-

teral), the Market Value of Securities on Loan to a given Borrower, and in accordance with general market practice and regulatory requirements. Bank shall notify Lender of material revisions to the foregoing procedures.

(e) <u>Investment of Cash Collateral.</u> (i) Bank is hereby authorized to invest and reinvest Cash Collateral in accordance with the investment guidelines annexed hereto as Appendix 1. (ii) Authorized Investments are made for the account of, and at the sole risk of, Lender. In that connection, Lender shall pay to Bank on demand in cash an amount equal to any deficiency in the amount of Collateral available for return to a Borrower pursuant to an applicable MSLA. Bank is authorized to select brokers and dealers for the execution of trades in connection with the investment of Cash Collateral.

(f)     <u>Distributions and Voting Rights.</u>

(i)  Bank shall credit the Account on payable date with the amount of all cash Distributions (but for purposes of this Section 5(f) and Section 7(b) hereof, the term "cash Distributions" shall not include any principal payment, whether paid upon the maturity of any debt Security or prior to its maturity) with respect to Securities on Loan over their record date that Lender would have received under the Agreement had such Securities not been on Loan over record date; provided, that with respect to Non-U.S. Securities, Bank's obligation to credit the Account shall extend only to record dates (and Distributions made during the period of the relevant Loan) up to and including the date of any Event of Default (as defined in the applicable MSLA). To the extent that cash Distributions are not delivered to Bank by Borrower and Bank has so credited the Account with such Distributions, Bank shall be subrogated to Lender's rights against Borrower as provided in Section 7(d). In connection with the foregoing, Lender shall promptly return any amount so credited upon oral or written notification from Bank that: (a) such amount has not been paid by the issuer of the Securities or the paying agent therefor (as applicable) in the ordinary course of business or (b) such amount was incorrectly credited. If Lender does not promptly return any amount upon such notification, Bank shall be entitled, upon oral or written notification to Lender, to reverse such credit by debiting the Account for the amount previously credited.

(ii)  (a)  Any non-cash Distribution which is in the nature of a stock split or a stock dividend shall be added to the existing Loan to which such dividend relates as of the date such non-cash Distribution is payable and shall be subject to the provisions hereof and the applicable MSLA. (b) Any non-cash Distribution which is in the nature of warrants or rights to purchase shares made with respect to any Securities on Loan shall be deemed to be a new Loan made by Lender to Borrower (and shall be considered to constitute Securities on Loan) as of the date such non-cash Distribution is payable and shall be subject to the provisions hereof; provided that Lender may, by giving Bank ten (10) Business Days' notice prior to the date of such non-cash Distribution (or such different amount of time as Bank may from time to time require on advice to Lender), direct Bank to request that the Borrower deliver such non-cash Distribution to Bank pursuant to the applicable MSLA, in which case Bank shall credit such non-cash Distribution to the Account. (c) If, despite (a) and (b) Lender requests that Bank instruct the Borrower to deliver a non-cash Distribution on its payable date, and Borrower fails so to deliver the non-cash Distribution, the indemnity provisions and corresponding subrogation rights set forth in Section 7 shall apply.

(iii)  During the term of any Loan, Bank shall permit the Securities on Loan to be transferred into the name of and be voted by the Borrower or others. Lender shall not be entitled to participate in any dividend reinvestment program or to vote proxies with respect to Securities that are eligible for Loan (whether or not actually on Loan) as of the applicable record date for such Securities.

(g) <u>Advances, overdrafts and indebtedness. Security Interest.</u> Bank may, in its sole discretion, advance funds on behalf of Lender in order to pay to Borrowers any Rebates or to return to Borrowers

Cash Collateral to which they are entitled pursuant to the applicable MSLA. Lender shall repay Bank on demand the amount of any advance or any other amount owed by Lender hereunder. Additionally, Lender shall reimburse Bank for its cost of funds with respect to any such advance and, if permitted by applicable law, pay Bank interest on such advance, provided that the aggregate amount so reimbursed and paid shall not exceed the rate customarily charged by Bank for such loans at the time such loan is made and is otherwise on such terms as Bank customarily makes such loans available. In order to secure repayment of any advance or other indebtedness of Lender to Bank arising hereunder, Bank shall have a continuing lien and security interest in and to all assets now or hereafter held in the Account and any Collateral Account (to which Lender is entitled hereunder) and any other property at any time held by it for the benefit of Lender or in which Lender may have an interest which is then in Bank's possession or control or in the possession or control of any third party acting on Bank's behalf. In this regard, Bank shall be entitled to all the rights and remedies of a pledgee under common law and a secured party under the New York Uniform Commercial Code and/or any other applicable laws and/or regulations as then in effect.

(h)  Termination of a Loan. (i) Loans shall generally be terminable on demand. With the prior approval of Lender, however, Loans may be made on the basis of a reasonably anticipated termination date ("Term Loan") and without providing for the right of substitution of equivalent securities. Termination of a Term Loan prior to its anticipated termination date by either Lender or Borrower may result in the terminating party having to pay the non-terminating party damages based on the cost of obtaining a replacement loan. (ii) Bank shall terminate any Loan of Securities to a Borrower as soon as practicable after: (a) receipt by Bank of a notice of termination of the respective MSLA; (b) receipt by Bank of Written Instructions directing it to terminate a Loan; (c) receipt by Bank of Written Instructions instructing it to delete from Appendix 2 the Borrower to which such Loan was made; (d) receipt by Bank of Written Instructions advising that the Security subject to a Loan is no longer subject to the representations contained in Section 3 hereof; (e) receipt by Bank of notice advising that an Event of Default (as defined in the applicable MSLA) has occurred and is continuing beyond any applicable grace period; (f) whenever Bank, in its sole discretion, elects to terminate such Loan other than a Term Loan; or (g) termination hereof. (iii) Lender acknowledges that: (1) termination hereof may result in the termination of certain Authorized Investments prior to their maturity which, in turn, may result in losses being realized in such Investments; and (2) any such losses shall be for the account and sole risk of Lender.

(i)  Sale of a Security on Loan. Lender shall advise Bank of the sale of Securities on Loan no later than the sale date. Bank shall not be liable for any failures occurring on a settlement date for sale of Securities if timely notice is not given by Lender as provided in the preceding sentence, and shall not be liable in any event (except as provided in Section 7) for failure of a Borrower to return Securities on Loan in a timely fashion.

(j)  Recordkeeping and Reports. Bank shall establish and maintain such records as are reasonably necessary to account for Loans that are made and the income derived therefrom. Bank shall provide Lender with a monthly statement describing the Loans made during the preceding month, and the income derived from Loans, during the period covered by such statement. A party shall comply with reasonable requests of the other party for information necessary to the requester's performance of its duties hereunder.

## Section 6 - Default by Borrower

(i)  Bank may assume (unless it has actual knowledge to the contrary) that any representations made by a Borrower in connection with any Loan are true, that no event which is or may become an Event of Default (as defined in the applicable MSLA) has occurred and that a Borrower has complied with its obligations under the applicable MSLA. Subject to Sections 5(f)(i)- (ii) and Sections 7(b)-(c)

hereof, Bank shall have no responsibility for any breach of any obligation, by any Borrower under or in connection with any MSLA or Loan. Bank shall have no responsibility for the accuracy or completeness of any information supplied by any Borrower. Bank shall not be liable as a result of taking or omitting to take any action provided that Bank shall have carried out its responsibilities hereunder in good faith. (ii) If any Borrower with respect to any Loan effected pursuant hereto and pursuant to the applicable MSLA fails to return any Securities on Loan when due thereunder for reasons other than relating to the solvency of the Borrower, Bank shall then, in addition to taking whatever action may be required by Section 7(c) hereof, take whatever action it deems appropriate in accordance with general market practice and Bank's reasonable judgment, including, but not necessarily limited to, claiming compensation from such Borrower on behalf of Lender in the event a trade executed by Lender fails on account of such Borrower's failure timely to have returned Securities on Loan or, where Bank deems it necessary, such other action as may be permitted by the applicable MSLA. (iii) If any Borrower with respect to any Loan effected pursuant hereto and pursuant to the applicable MSLA fails to return any Securities on Loan when due thereunder for reasons relating to the solvency of the Borrower, Bank shall then, in addition to taking whatever action may be required by Section 7(c), hereof take such action as its deems appropriate in accordance with Bank's reasonable judgment under the applicable MSLA.

## Section 7 - Liabilities, Indemnification

(a)  Liabilities.  Except as provided in Sections 5(f)(i)-(ii) and Sections 7(b)-(c) hereof, Bank shall not be liable for any costs, expenses, damages, liabilities or claims (including attorneys' and accountants' fees) incurred by Lender, except those costs, expenses, damages, liabilities and claims arising out of the negligence, bad faith or willful misconduct of Bank. Bank shall have no obligation hereunder for: (i) costs, expenses, damages, liabilities or claims (including attorneys' and accountants' fees), which are sustained or incurred by Lender by reason of any action or inaction by any pricing service, any Depository or a Triparty Institution or their respective successors or nominees; and (ii) any failure to perform any obligation due to any matters beyond the control of Bank. In no event shall Bank be liable for indirect or consequential damages or lost profits or loss of business, arising hereunder or in connection herewith, even if previously informed of the possibility of such damages and regardless of the form of action.

Except for any costs or expenses incurred by Bank in performing its obligations pursuant to Sections 5(f)(i)-(ii) and Sections 7(b)-(c) hereof and ordinary operating expenses incurred by Bank in providing services hereunder, Lender shall indemnify Bank and hold it harmless from and against any and all costs, expenses, damages, liabilities or claims, including reasonable fees and expenses of counsel, which Bank may sustain or incur or which may be asserted against Bank by reason of or as a result of any action taken or omitted by Bank in connection with operating hereunder or enforcing Lender's rights under the applicable MSLA, other than those costs, expenses, damages, liabilities or claims arising out of the negligence, bad faith or willful misconduct of Bank. The foregoing indemnity shall be a continuing obligation of Lender, its successors and assigns, notwithstanding the termination of any Loans hereunder or of this Lending Agreement. Bank may charge any amounts to which it is entitled hereunder against the Account, and Lender shall be entitled to an accounting of all amounts so charged. Actions taken or omitted in reliance upon Proper Instructions, or upon any information, order, indenture, stock certificate, power of attorney, assignment, affidavit or other instrument reasonably believed by Bank, in good faith, to be genuine or bearing the signature of a person or persons believed, in good faith, to be authorized to sign, countersign or execute the same, shall be conclusively presumed to have been taken or omitted in good faith.

(b)  Indemnification of Lender in respect of Distributions.  If the Borrower in respect of any Loan effected pursuant hereto and pursuant to the applicable MSLA fails to deliver any non-cash Distributions with respect to Securities on Loan as and when requested to do so by Bank as provided

in Section 5(f)(ii)(c) hereof, (x) Bank shall with respect to U.S. Securities at its option, credit such non-cash Distribution or an amount equivalent thereto to the Account on the date it is due, or (y) with respect to Non-U.S. Securities, for any non-cash Distributions made during the period of the relevant Loan (up to and including the date of any Event of Default) or for any non-cash Distributions for which the record date occurs on or before the date of any Event of Default, Bank shall, at its option, either (i) purchase replacement securities (of an equal amount of the same issue, class, type or series as the Distribution) on the principal market in which such securities are traded or (ii) credit the Account, with the Market Value in Dollars of such Distributions on the due date as determined by Bank in good faith.

(c) Indemnification of Lender in respect of Securities.

(i) U.S. Securities. If the Borrower in respect of any Loan of U.S. Securities effected pursuant hereto and pursuant to the applicable MSLA fails to return any Securities on Loan to Bank for the Account when due thereunder, which is the date an Event of Default shall have occurred under the applicable MSLA (the "Return Date"), then Bank shall, at its expense (subject to Sections 7(c)(iii) and 7(d) hereof) deposit replacement Securities of the same issue, type, class and series to the Account, as soon as practicable. If Bank is unable to obtain replacement Securities, Bank shall credit, at its expense (and subject to Sections 7(c)(iii) and 7(d) hereof), the Account in Dollars with the Market Value of such Securities on Loan on the credit date.

(ii) Non-U.S. Securities. If the Borrower in respect of any Loan of Non-U.S. Securities effected pursuant hereto and pursuant to the applicable MSLA fails to return any Securities on Loan to Bank for the Account on the Return Date, Bank shall, at Bank's sole election and at its expense (subject to Sections 7(c)(iii) and 7(d) hereof), as soon as practicable, either (x) deposit replacement Securities of the same issue, type, class and series to the Account or (y) credit the Account, in Dollars with the Market Value of the Collateral as determined as of the Return Date (up to but not to exceed the Market Value of the Securities on Loan as of the Return Date); provided, however, that if the Market Value of the Collateral as of the Return Date is less than the Market Value of the Securities on Loan as of the Return Date (other than as a consequence of losses on Authorized Investments or Letter of Credit Collateral as provided in Section 7(c)(iii) hereof and subject to Section 7(d) hereof), Bank shall credit the Account with such further amount as shall account for the difference between the Market Value of the Collateral and the Market Value of the Securities on Loan as of the Return Date.

(iii) In connection with (i) and (ii) above, "Market Value" shall: (y) be determined by Bank in accordance with the applicable MSLA, including the computation of Dollar equivalents where Securities on Loan and/or Collateral (and Proceeds) are denominated in a currency other than Dollars; and (z) in the case of fixed income Securities, include accrued but unpaid interest. If the Market Value of the Cash Collateral on a credit date or a Return Date is less than that which is required to purchase replacement securities or to credit the Account with the Market Value in Dollars of the Securities on Loan as a result of a decrease in the Market Value of Authorized Investments, Bank shall not be responsible for that decrease and shall deposit replacement securities or credit the Account, with the Market Value of such Securities on Loan only to an amount net of the decrease in Market Value of Authorized Investments. With respect to and to the extent that a Loan is made against Letter of Credit Collateral, in the event of a default by both the issuer of the Letter of Credit and the Borrower, Bank shall not be responsible for any resulting decrease in the Market Value of such Letter of Credit Collateral or have any obligation to either contribute to or otherwise provide for any resulting Collateral deficiency.

(d) Subrogation. If Bank makes a payment or a purchase pursuant to Sections 5(f), 7(b) or 7(c) Bank shall, to the extent of such payment or purchase, be subrogated to, and Lender shall assign and be deemed to have assigned to Bank, all of its rights in, to and against the Borrower (and any guarantor

thereof) in respect of such Loan, any Collateral pledged by the Borrower in respect of such Loan (including any Letters of Credit and the issuers thereof), and all proceeds of such Collateral. In the event that Lender receives or is credited with any payment, benefit or value from or on behalf of the Borrower in respect of rights to which Bank is subrogated as provided herein, Lender shall promptly remit or pay to Bank the same (or its Dollar equivalent).

## Section 8 - Bank Compensation

(a) In connection with each Loan hereunder, Lender shall pay to Bank (i) a fee equal to 40% of earnings (less any Rebate paid by Bank to a Borrower) derived from Authorized Investments in connection with Loans of U.S. Securities collateralized by cash; (ii) a fee equal to 60% of earnings (less any Rebate paid by Bank to a Borrower) derived from Authorized Investments in connection with Loans of Non-U.S. Securities collateralized by cash; (iii) a fee equal to 40% of any Loan Fee paid or payable by the Borrower in connection with Loans of U.S. Securities not collateralized by cash; and (iv) a fee equal to 60% of any Loan Fee paid or payable by the Borrower in connection with Loans of Non-U.S. Securities not collateralized by cash. (b) The fee payable to Bank for services performed pursuant to Section 5(e) hereof shall be equal to one tenth of one percent (0.1%) of the amount of Cash Collateral used to make outstanding Authorized Investments. All securities constituting Authorized Investments shall be valued based on their amortized cost. Fees shall be accrued or charged daily, as appropriate, and shall be payable monthly in arrears. (c) Bank may retain its share of earnings under Section 8 (a) and its earnings under 8(b) hereof and shall credit Lender monthly with Lender's share of earnings under Section 8(a). Bank may charge reasonable expenses incurred by Bank hereunder and any other amounts owed by Lender hereunder against the Account and/or a Collateral Account.

## Section 9 - Taxes .

(a) Lender shall be responsible for all filings, tax returns and reports on any Loans undertaken by Bank on Lender's behalf which are to be made to any authority whether governmental or otherwise and for the payment of all unpaid calls, taxes (including, without limitation, any value added tax), imposts, levies or duties due on any principal or interest, or any other liability or payment arising out of or in connection with any Securities or any Collateral, and in so far as Bank is under any obligation (whether of a governmental nature or otherwise) to pay the same on Lender's behalf Bank may do so out of any monies or assets held by it pursuant to the terms of the Agreement or hereunder.

(b) Lender acknowledges that: (i) the tax treatment of the payments made by a Borrower to a Lender in lieu of Distributions (including, by way of illustration and not of limitation, with respect to any dividends received deduction and amounts paid by the depositary on American Depositary Receipts and Global Depositary Receipts) may differ from the tax treatment of the Distribution to which such payments relate; and (ii) it has made its own determination as to the tax treatment of any Loan made pursuant hereto, of any in lieu of payments made by a Borrower and of any remuneration and any other amounts that may be received by it hereunder.

## Section 10 - Instructions

(a)(i) Written Instructions. "Written Instructions" shall mean written communications actually received by Bank from an Authorized Person or from a person reasonably believed by Bank to be an Authorized Person by letter, memorandum, telegram, cable, telex, telecopy facsimile, computer, video (CRT) terminal or other on-line system, or any other method reasonably acceptable to Bank and whereby Bank is able to verify with a reasonable degree of certainty the identity of the sender of such communications or which communications are transmitted with proper testing or authentication pursuant to terms and conditions which Bank may specify. (ii) Oral Instructions. "Oral Instructions"

shall mean oral communications actually received by Bank from an Authorized Person or from a person reasonably believed by Bank to be an Authorized Person. Oral Instructions shall promptly thereafter be confirmed in writing by an Authorized Person (which confirmation may bear the facsimile signature of such Person), but Lender shall hold Bank harmless for the failure of an Authorized Person to send such confirmation in writing, the failure of such confirmation to conform to the Oral Instructions received, or Bank's failure to produce such confirmation at any subsequent time. Lender shall be responsible for safeguarding any testkeys, identification codes or other security devices which Bank may make available to Lender or its Authorized Persons.

(b) Unless otherwise expressly provided, all Proper Instructions shall continue in full force and effect until canceled or superseded.

Section 11 - Pricing Services

Bank may use any pricing service referred to in an applicable MSLA and any other recognized pricing service (including itself and any of its affiliates) in order to perform its valuation responsibilities with respect to Securities, Collateral and Authorized Investments, and Lender shall hold Bank harmless from and against any loss or damage suffered or incurred as a result of errors or omissions of any such pricing service.

Section 12 - Termination

This Lending Agreement may be terminated at any time by either party upon delivery to the other party of notice specifying the date of such termination, which shall be not less than 30 days after the date of receipt of such notice. Notwithstanding any such notice, this Lending Agreement shall continue in full force and effect with respect to all Loans outstanding on the termination date, which Loans shall, however, be terminated as soon as reasonably practicable.

Section 13 - Miscellaneous

(a) Legal proceedings. Bank may refrain from bringing any legal action or proceeding arising out of or in connection with any Loan until it shall have received such security as it may require for all costs, expenses (including legal fees) and liabilities which it shall or may expend or incur in relation thereto.

(b) Integration. Lending Agreement to Govern. This Lending Agreement and the Agreement contain the complete agreement of the parties with respect to the subject matter hereof and supersede and replace any previously made proposals, representations, warranties or agreements with respect thereto by the parties. In the event of any conflict between this Lending Agreement and the Agreement, this Lending Agreement shall govern.

(c) Notices. Unless expressly provided herein to the contrary, notices hereunder shall be in writing, and delivered by telecopier, overnight express mail, first-class postage prepaid, delivered personally or by receipted courier service. All such notices which are mailed shall be deemed delivered upon receipt. Notices shall be addressed as follows (or to such other address as a party may from time to time designate on notice duly given in accordance with this Section): notices to Bank shall be addressed to it at 4 New York Plaza, New York, New York, 10004, Attention: Global Securities Lending; notices to be given to Lender shall be addressed to it at its offices at 940 Main Street, Suite 105, El Centro, California 92243, Attention: Imperial County Employees' Retirement System.

(d) Amendments. Waiver. This Lending Agreement may be modified only by a written amendment signed by both parties, and no waiver of any provision hereof shall be effective unless expressed in a writing signed by the party to be charged.

(e) Governing Law. Consent to Jurisdiction. Waiver of Immunity. THIS LENDING AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO THE CONFLICT OF LAWS PRINCIPLES THEREOF. Bank and Lender each hereby consents to the jurisdiction of a state or federal court situated in New York City, New York in connection with any dispute arising hereunder and Lender hereby waives any claim of forum non conveniens to the extent that it may lawfully do so. To the extent that in any jurisdiction Lender may now or hereafter be entitled to claim, for itself or its assets, immunity from suit, execution, attachment (before or after judgment) or other legal process, Lender irrevocably shall not claim, and it hereby waives, such immunity.

(f) Counterparts. Headings. This Lending Agreement may be executed in several counterparts, each one of which shall constitute an original, and all collectively shall constitute but one instrument. The headings of the sections hereof are included for convenience of reference only and do not form part of this Lending Agreement.

(g) Severability. Any provisions hereof which may be determined by competent authority to be prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

(h) PTE 99-34. (i) Lender acknowledges that: (A) certain segments of "Global Capital Markets", "IS" and "SL" (each as defined herein) are, or may be deemed to be, the same legal entity; and (B) it has received a copy of Department of Labor PTE 99-34. (ii) Bank hereby represents to Lender that each and every Loan made to Global Capital Markets on behalf of Lender shall be at market rates and shall, in no event, be less favorable to Lender than a Loan of such Securities, made at the same time and under the same circumstances, to an unaffiliated borrower and shall be effectively at arm's length. For purposes hereof, "Global Capital Markets" shall mean affiliates of J.P. Morgan Chase & Co. ("JPM") which are engaged in the capital markets line of business, "IS" shall mean JPM's Investor Services line of business, as operated through Bank and its affiliates, and "SL" shall mean the Bank's Securities Lending division or any other similar division of Bank or U.S. affiliates of JPM. (iii) In addition to subsection (ii) of this Section 13(h), Bank hereby acknowledges its responsibility to perform all the other obligations imposed on it by PTE 99-34.

IN WITNESS WHEREOF, the parties have executed this Lending Agreement as of the date first above-written.

IMPERIAL COUNTY
EMPLOYEES' RETIREMENT SYSTEM

By:
Name: DAVID PRINCE
Title:  Chairman of the Board

By:
BARBARA MC FETRIDGE
Retirement Systems Manager

JPMORGAN CHASE BANK

By:
Name:
Title:  GENE GEMELLI
VICE PRESIDENT

251380;v16

12

**JPMorgan Chase Bank Securities Lending**
**Investment Guidelines**
**Appendix 1**

## A.    FUND OBJECTIVE

This short term, fixed income fund (the "Fund") is designed to obtain an attractive yield on securities lending cash collateral by investing in securities that satisfy these guidelines, as applied at the time of purchase.

## B.    PERMISSIBLE INVESTMENTS

1. Instruments

The Fund is permitted to purchase both fixed-income securities and other securities with debt-like characteristics on a fixed rate and floating rate basis, including:

> Asset Backed Securities
> Bank Notes
> Bankers' Acceptances
> Certificates of Deposit
> Commercial Paper, including unregistered (so-called 4(2)) Commercial Paper
> Deposit Notes
> Investment Agreements, Funding Agreements, or GICs entered into, with, or guaranteed by an insurance company
> Loan Participations
> Master Notes
> Medium Term Notes
> Repurchase Agreements, subject to the requirements of paragraph G
> Time Deposits
> U.S. Government Securities, which shall include securities issued or guaranteed as to principal and interest by the United States Government, its agencies instrumentalities or establishments

2. Commingled Vehicles

In addition, for purposes of these guidelines, (a) shares of a money market mutual fund registered with the Securities and Exchange Commission as an investment company under the Investment Company Act of 1940, as amended, and (b) units in a short term collective investment fund managed by JPMorgan Chase Bank shall be: (i) permissible investments, (ii) subject to no limitation under the Concentration Guidelines in paragraph E, (iii) deemed to have a "Final Maturity" (as defined below) of one day for purposes of the Maturity Guidelines in paragraph F and (iv) deemed to meet the applicable Quality Guidelines in paragraph H.

3. Certain Derivatives

The Fund shall not invest in any instrument whose coupon rate moves in the opposite direction of the index to which such instrument is tied. In addition, in the event that the Fund invests in any instrument whose coupon rate moves when the index to which such rate is tied moves, the Fund shall invest only in those of such instruments whose movements in the coupon rate are equivalent to movements in the index.

4. Currency

Only U.S. Dollar denominated securities shall be permissible under these guidelines.

5. Foreign Issuers

There are no limitations on foreign issuers, provided that they otherwise meet the criteria set forth in these guidelines.

C.     **PROHIBITED INVESTMENTS**

1. Equity securities (except that equity securities, such as owner trust certificates, that have predominantly debt characteristics shall not be prohibited)

2. Floating rate securities with an interest rate cap, with the exception of those capped to comply with state usury laws

D.     **LIMITATIONS ON AMOUNTS INVESTED/CASH RESERVE; PERMITTED BORROWING**

1. The Fund shall seek to be fully invested in permissible securities as of the close of business on each day.

2. On a temporary basis not to exceed seven days and solely for the purpose of liquidity, the Fund may enter into reverse repurchase agreements with respect to U.S. Government Securities. While any such repurchase agreement is outstanding, the Fund shall not make additional term investments.

E.     **CONCENTRATION GUIDELINES**

1. The greater of $25 million or 10% of the Fund's total assets, measured at the time of purchase, may be invested in the securities of a single issuer (other than U.S. Government Securities, repurchase agreements and the commingled vehicles identified in paragraph B, as to which there is no limitation).

## F.    MATURITY GUIDELINES

1.  Fixed rate instruments must have a Final Maturity at the time of purchase that does not exceed 2 years.

2.  Floating rate instruments which are U.S. Government Securities must have a Final Maturity that does not exceed 5 years, and all other floating rate instruments must have a Final Maturity that does not exceed 2 years.

3.  "Final Maturity" for purposes of these guidelines means the earliest of: (i) the date noted on the face of the instrument as the date on which the principal amount must be paid, (ii) in the case of an instrument with an unconditional put or unconditional demand feature, the date on which the principal amount of the instrument can be recovered by demand, or (iii) in the case of a floating rate instrument, the next readjustment of the interest rate, provided that, if the maturity of a floating rate instrument is determined by reference to an unconditional put or unconditional demand feature, the period remaining between adjustments of the interest rate must not exceed the period specified in paragraph F.1. For purposes of calculating days to maturity of the instrument and the portfolio's weighted average maturity, a floating rate instrument shall be deemed to have a maturity equal to the period remaining until the next readjustment of the interest rate.

4.  A repurchase agreement shall be deemed to have a maturity equal to the period remaining until the date on which the repurchase of the underlying securities is scheduled to occur or, where no date is specified but the agreement is subject to a demand, the notice period applicable to a demand for the repurchase of the securities.

5.  Adjustable rate mortgages shall have a maturity equal to the period remaining until the last principal payment is required by the terms of the underlying obligation to be paid.

6.  The Fund's maximum weighted average maturity may not exceed 120 days.

## G.    REPURCHASE AGREEMENTS
(including term repurchase agreements, entered into using custodians deemed appropriate by JPMorgan Chase Bank)

1. Permitted Collateral

Bills, bonds or notes issued by the United States Treasury, or other securities guaranteed as to principal and interest by the Government of the United States, its agencies, instrumentalities or establishments; mortgage-backed securities sponsored by agencies of the Government of the United States; corporate obligations of domestic and foreign issuers with a minimum rating of AA- by Standard & Poor's Corporation

("S&P") or Aa3 by Moody's Investor Services, Inc. ("Moody's"); asset-backed securities with a minimum rating of AAA by S&P or Aaa by Moody's; or money market instruments (including, but not limited to, certificates of deposit, bank notes, deposit notes, bankers' acceptances and commercial paper issued by domestic issuers with a minimum rating of A-1 by S&P and P-1 by Moody's).

2. Diversification

A repurchase agreement shall be deemed to be an acquisition of the underlying securities, provided that the obligation of the seller to repurchase the securities from the Fund is fully collateralized.

## H.    QUALITY GUIDELINES

1. Ratings

Except as otherwise provided with respect to repurchase agreement collateral in paragraph G:

Specified rating categories at initial time of purchase shall be:

      a. Short-Term: Any two of the following: A-1 by S&P, P-1 by Moody's, F-1 by Fitch.

      b. Long-Term: At least A- by S&P and A-3 by Moody's.

A security without its own rating shall be considered to be rated if it has been issued by an issuer that is rated with respect to: (i) a class of short-term debt obligations, in the case of short-term ratings, or (ii) a class of long-term debt obligations, in the case of long-term ratings, or any security within the relevant class that is comparable in priority and security with the purchased security. Long-term ratings shall be used only if a security is not rated and no security of the same issuer that is comparable in priority with such security is rated.

2. Downgrades

The Fund may not purchase securities based on either an S&P, Moody's, or Fitch rating where the applicable rating organization has announced publicly that it is examining the rating for a possible downgrade. This limitation does not apply to securities rated A1+ by S&P.

In the event that a security held in the portfolio falls below the minimum guideline as detailed in this paragraph H as a result of being downgraded by any of S&P, Moody's or Fitch, JPMorgan shall notify the Lender and await instructions. In the absence of a contrary instruction, JPMorgan shall take no action in respect of the affected security. In no event shall JPMorgan be liable for any consequences of a rating downgrade ,

including, but not limited to, retention of the affected security in the absence of a sale instruction from the Lender. Lender acknowledges that any loss from a sale shall be for its account.

* * *

*Each Lender should regularly analyze these guidelines to determine their continued appropriateness, recognizing that all investments bear risk and that return of principal is not assured.*

IMPERIAL COUNTY EMPLOYEES' RETIREMENT SYSTEM

By: _____          By: _____
     DAVID PRINCE,                              BARBARA MC FETRIDGE
     Chairman of the Board                     Retirement Systems Manager

Date: June 19 , 2002

Ver.121401

**Appendix 2**
# JPMorgan Chase Bank
## Securities Lending
## Approved Borrowers

### Borrowers located in the U.S.

1. A.G. Edwards & Sons, Inc.
2. Advest Inc.
3. ABN AMRO Inc.
4. ABN AMRO Bank N.V., New York Branch
5. ABN AMRO Sage Corporation
6. ABN AMRO Securities LLC
7. Alpine Associates
8. Australia & New Zealand Banking Group Limited
9. Banc of America Securities LLC
10. Banc One Capital Markets, Inc
11. Barclays Capital, Inc.
12. Bear, Stearns & Co., Inc.
13. Bear Stearns Securities Corp
14. Bernard L. Madoff Investment Securities
15. Bleichroeder (Arnhold & S.), Inc.
16. BMO Nesbitt Burns Corp.
17. BNP Paribas Securities Corp.
18. BNY Clearing Services LLC
19. Cantor Fitzgerald & Company
20. Cantor, Fitzgerald Securities
21. CIBC World Markets Corp.
22. Citadel Trading Group L.L.C.
23. Commerzbank Capital Markets Corporation
24. Credit Lyonnais Securities (USA) Inc.
25. Credit Suisse First Boston Corporation
26. Dean Witter Reynolds, Inc.
27. Deutsche Banc Alex. Brown Inc.
28. Donaldson, Lufkin & Jenrette Securities Corporation
29. Dresdner Kleinwort Wasserstein Securities LLC
30. Fahnestock & Co., Inc.
31. Ferris Baker Watts, Inc.
32. Fimat USA, Inc.
33. First Albany Corporation
34. First Union National Bank
35. First Union Securities, Inc.
36. Fiserv Securities , Inc..
37. Fortis Investment Services LLC
38. Fuji Securities, Inc.
39. G.X. Clarke & Co.
40. Garban Corporates, LLC
41. Garban LLC
42. Goldman, Sachs & Co.
43. Greenwich Capital Markets, Inc.
44. Gruntal & Co., LLC
45. HSBC Securities,(USA) Inc.
46. iClearing LLC
47. ING Barings Corp.
48. International Services Division of BNY Clearing Services LLC

**Appendix 2**
# JPMorgan Chase Bank
## Securities Lending
## Approved Borrowers

49. Investec Ernst & Company
50. JPMorgan Chase Bank**
51. J.P. Morgan Securities Inc. **
52. Jefferies & Company, Inc.
53. Kellner, DiLeo & Company
54. LaBranche Financial Services, Inc.
55. Lazard Freres & Co. LLC
56. Legg Mason Wood Walker, Inc.
57. Lehman Brothers Inc
58. Lipper Convertibles LP
59. Lipper Convertibles Series II
60. Man Financial Inc.
61. MS Securites
62. Maple Securities U.S.A. Inc.
63. Merrill Lynch Government Securities Inc.
64. Merrill Lynch, Pierce, Fenner & Smith Inc.
65. Mesirow Financial
66. Morgan Stanley & Co. Incorporated
67. National Financial Services LLC
68. Neuberger Berman, LLC
69. Nomura Securities International, Inc.
70. O'Connor & Company L.L.C.
71. Paloma Securities L.L.C.
72. Pax Clearing Corp. Ltd Partnership
73. Penson Financial Services, Inc.
74. Prudential Securities Inc.
75. Raymond James & Associates, Inc.
76. RBC Dain Rauscher Incorporated
77. RBC Dominion Securities Corporation
78. Refco Securities, LLC
79. Salomon Smith Barney Inc.
80. SG Cowen Securities Corp.
81. Societa Generale, New York Branch
82. Southwest Securities, Inc.
83. Spear, Leeds & Kellogg
84. Swiss American Securities Inc.
85. TD Securities (USA) Inc.
86. Timber Hill LLC
87. UBS PaineWebber Inc.
88. UBS Warburg LLC
89. US Clearing Corp., a division of Fleet Securities, Inc.
90. Van Der Moolen Specialists USA, LLC
91. Wedbush Morgan Securities, Inc.
92. Wells Fargo Investments LLC
93. Weiss, Peck & Greer
94. Westdeutsche Landesbank Girozentrale (NY Branch)
95. Zions First National Bank

Last updated: February 8, 2002

### Appendix 2
# JPMorgan Chase Bank
## Securities Lending
## Approved Borrowers

__Borrowers located outside the U.S.__

1. Barclays Capital Securities Ltd.
2. Bear Stearns International Limited
3. BNP Paribas
4. Cater Allen International Limited
5. CIBC World Markets PLC
6. J P Morgan Europe Ltd.**
7. Commerzbank AG
8. Credit Suisse First Boston Europe Limited
9. Daiwa Securities SMBC Europe Ltd.
10. Deutsche Bank AG
11. Goldman Sachs International
12. ING Baring Ltd.
13. JP Morgan Securities Limited**
14. Lehman Brothers International (Europe)
15. Maple Securities (UK) Limited
16. Merrill Lynch International
17. Morgan Stanley & Co. International Limited
18. Nomura International PLC
19. SG Securities International  Ltd.
20. Salomon Brothers International Ltd.
21. UBS AG London Branch
22. Barclays Bank PLC          (UK Securities  Borrower Only)
23. Bear Stearns International Trading Ltd.   (UK Securities  Borrower Only)
24. Credit Suisse First Boston Equities Limited  (UK Securities Borrower  Only)
25. Deutsche Bank AG London Branch   (UK Securities Borrower  Only)
26. Dresdner Bank AG London Branch   (UK Securities Borrower  Only)
27. GNI Limited   (UK Securities  Borrower Only)
28. Investec Bank UK Ltd.   (UK Securities  Borrower Only)
29. Lazard Bank Limited   (UK Securities Borrower Only)
30. Morgan Grenfell & Co. Limited   UK Securities Borrower Only)
31. Morgan Stanley Securities Limited   (UK Securities Borrower Only)
32. Salomon Brothers UK Equity Ltd.   (UK Securities Borrower Only)
33. J.P. Morgan Australia Limited   (Australia-domiciled clients only)
34. CSFB Australia Ltd.   (Australia-domiciled clients only)
35. Macquarie Bank Limited   (Australia-domiciled clients only)
36. Merrill Lynch Equities (Australia) Ltd.  (Australia-domiciled clients only)
37. National Australia Bank   (Australia-domiciled clients only)
38. J.P. Morgan Australia Securities Limited  (Australia-domiciled clients only)
39. Paloma Securities LLC/SEB AB   (Australia-domiciled clients only)
40. Salomon Smith Barney Australia Securities Pty Limited  (Australia-domiciled clients only)
41. UBS Warburg Australia Equities Ltd.  (Australia-domiciled clients only)
42. UBS Warburg Australia Ltd.   (Australia-domiciled clients only)
43. BNP Paribas Securities (Japan) Limited  (Japan-domiciled clients only)
44. Credit Suisse First Boston (Japan) Limited  (Japan-domiciled clients only)

**\*\* JPMorgan Chase Bank affiliate : Unapproved for ERISA lenders without DOL PT exemption 99-34**

January 7, 2002

**Appendix 2**
# JPMorgan Chase Bank
## Securities Lending
## Approved Borrowers

** JPMorgan Chase Bank affiliate : Unapproved for ERISA lenders without DOL PT exemption 99-34

**Appendix 2**
# JPMorgan Chase Bank
## Securities Lending
## Approved Borrowers

## U.K. approved Borrowers that have signed an OSLA

Barclays Capital Securities Limited
Bear Stearns International Limited
BNP Paribas
Cater Allen International Limited
CIBC World Markets PLC
JPMorgan Europe Limited
Commerzbank AG
Credit Suisse First Boston (Europe) Limited
Daiwa Securities SMBC Europe Limited
Deutsche Bank AG
GNI Ltd
Goldman Sachs International
ING Baring Limited
JP Morgan Securities Limited
Lehman Brothers International (Europe)
Maple Securities (UK) Limited
Merrill Lynch International
Morgan Stanley & Co. International Limited
Nomura International PLC
SG Securities (London) Limited
Salomon Brothers International Limited
UBS AG London Branch

U.K. approved Borrowers that have signed a GESLA

Barclays Bank Plc
Cater Allen International Limited
Credit Suisse First Boston (Europe) Limited
Deutsche Bank AG London Branch
Dresdner Bank AG London Branch
GNI Limited
Goldman Sachs International Limited
Halifax Plc
Investec Bank UK Limited
JPMorgan Securities Limited
Lazard Bank Limited
Lehman Brothers International (Europe)
Morgan Stanley & Co. International Limited
Merrill Lynch International
Salomon Brothers International Limited
UBS AG London Branch

Appendix 2
# JPMorgan Chase Bank
## Securities Lending
## Approved Borrowers

**U.K. approved Borrowers that have signed a MEFISLA**                    pg 3 of 3

Cater Allen International Limited
Bear Stearns International Trading Limited
GNI Limited
Commerzbank AG
Credit Suisse First Boston Equities Limited
Goldman Sachs International
Morgan Grenfell & Co Limited
Nomura International Plc
Investec Bank (UK) Limited
JP Morgan Securities Limited
Lazard Bank Limited
Lehman Brothers International (Europe)
Merrill Lynch International Limited
Morgan Stanley Securities Limited
Nomura International Plc
Salomon Brothers UK Equity Limited
UBS AG London Branch


**Australian approved Borrowers that have signed a ASLA**

1. J.P. Morgan Australia Limited
2. CSFB Australia Ltd.
3. Macquarie Bank Limited
4. Merrill Lynch Equities (Australia) Ltd.
5. National Australia Bank
6. J.P. Morgan Australia Securities Limited
7. Paloma Securities LLC/SEB AB
8. Salomon Smith Barney Australia Securities Pty Limited
9. UBS Warburg Australia Equities Ltd.
10. UBS Warburg Australia Ltd.


**Japanese approved Borrowers that have signed a JSDA**

1. BNP Paribas Securities (Japan) Limited
2. Credit Suisse First Boston (Japan) Limited


February 5, 2002

**Appendix 3**
**(formerly Appendix 5)**
**JPMorgan Chase Bank**
**Securities Lending**
**ACCEPTABLE COLLATERAL**

1)          CASH

2)          SECURITIES

3)          LETTERS OF CREDIT

**Appendix 4**
**(formerly Appendix 2)**
**JPMorgan Chase Bank**
**Securities Lending**
## LETTER OF CREDIT BANKS

ABN AMRO Bank
Banco Santander Central Hispano S.A.
Bank of America NA
Bank of Montreal
Bank of New York
Bank One NA - Chicago
Bankers Trust Co.
Barclay's Bank PLC
BNP Paribas
Canadian Imperial Bank of Commerce
Citibank, NA
Credit Suisse First Boston
Den Danske Bank A/S
Deutsche Bank AG
Fleet National Bank
Fortis Bank NV SA
HSBC Bank PLC
HSBC Bank USA
Lloyds TSB Bank PLC
Mellon Bank N.A.
Morgan Guaranty Trust Co. of NY
National Westminister Bank PLC
PNC Bank N.A.
Rabobank Nederland
Royal Bank of Canada
Royal Bank of Scotland PLC
Societe Generale
Svenska Handelsbanken
Toronto-Dominion Bank
UBS AG

02/12/02

## AMENDMENT TO SECURITIES LENDING AGREEMENT

AMENDMENT ("Amendment"), dated as of August    , 2002, to the Securities Lending Agreement ("Lending Agreement"), dated as of June 19, 2002, between Imperial County Employees' Retirement System and JPMorgan Chase Bank.

It is hereby agreed as follows:

1. The Lending Agreement is hereby amended by adding the following new sentence at the end of Section 1(c) thereof:

> The foregoing investments shall be made through the 'JPMorgan Chase Bank Cash Collateral Fund', a collective investment fund managed by Bank.

2. The Lending Agreement is hereby further amended by added the following at the end of the second sentence of Section 5(b) thereof:

> ; it being understood and agreed, however, that the JPMorgan Chase Bank Cash Collateral Fund shall consist solely of assets of tax exempt defined benefit and defined contribution retirement plans of: (a) entities governed by ERISA and (b) public entities

3. Existing Appendix 1 to the Lending Agreement is hereby deleted and the version of Appendix 1 annexed hereto and captioned "JPMorgan Chase Bank Cash Collateral Fund" is substituted in lieu thereof.

4. Except as expressly amended by this Amendment, the Lending Agreement shall remain in full force and effect in accordance with its terms. All references to the Agreement in the Lending Agreement or any other document executed or delivered in connection therewith shall, from and after the effective date of this Amendment, be deemed to be references to the Lending Agreement, as amended hereby, unless the context expressly requires otherwise.

5. This Amendment may be executed in any number of counterparts, each of which so executed shall be deemed to be an original, but all such counterparts shall together constitute one and the same instrument.

6. This Amendment shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to principles of conflict of laws thereunder.

IN WITNESS WHEREOF, the parties have executed this Amendment as of the date first above-written.

IMPERIAL COUNTY EMPLOYEES'              JPMORGAN CHASE BANK
RETIREMENT SYSTEM

By:                                     By:
Name:   **DAVID H. PRINCE**             Name:
Title:  **CHAIRMAN**                    Title:   **GENE GEMELLI**
Date:   **AUGUST 22, 2002**                      VICE PRESIDENT

**RECEIVED**

AUG 2 7 2002

IMPERIAL COUNTY
EMPLOYEES RETIREMENT
SYSTEMS

274776:v03

SECURITIES LENDING

**JPMORGAN CHASE BANK CASH COLLATERAL FUND (VAN 18)**

**INVESTMENT GUIDELINES**

**A.    FUND OBJECTIVE**

This short term, fixed income fund (the "Fund") is designed to obtain an attractive yield on securities lending cash collateral by investing in eligible securities that satisfy these guidelines, as applied at the time of purchase.

**B.    PERMISSIBLE INVESTMENTS**

**1.    Instruments:**

The Fund is permitted to purchase fixed-income instruments and other securities with debt-like characteristics, including (subject to the Prohibited Investments set forth in paragraph C):

| | |
|---|---|
| Asset Backed Securities | Master Notes |
| Bank Notes | Medium Term Notes |
| Banker's Acceptances | Promissory Notes |
| Certificates of Deposit | Repurchase Agreements |
| Commercial Paper, | Time Deposits |
|    including unregistered | U.S. Government Securities |
|    (so-called 4(2)) |    including Obligations of |
|    Commercial Paper |    the U.S. Treasury and |
| Corporate Bonds |    Obligations of U.S. |
| Corporate Notes |    Government Agencies or |
| Floating Rate Notes |    Instrumentalities |
| Floating Rate | |
|    Certificates of Deposit | |
| GICs and synthetic GICs | |

**2.    Commingled Vehicles:**

In addition, for purposes of these guidelines, shares of a money market mutual fund (a "money market fund") registered with the Securities and Exchange Commission as an investment company under the Investment Company Act of 1940, as amended (the "1940 Act"): (i) shall be an Eligible Security, (ii) shall be deemed to have a Final Maturity of one day for purposes of the Maturity

Guidelines in paragraph F and (iii) are not subject to the Concentration Guidelines in paragraph E or the Quality Guidelines in paragraph H.

**3.    Currency:**

U.S. dollar denominated securities only

**4.    Limitation on foreign issuers:**

None, provided that they otherwise meet the criteria set forth in these guidelines.

**C.    PROHIBITED INVESTMENTS**

1.    Any securities issued by J.P. Morgan Chase & Co. or its affiliates.

2.    Equity securities other than equity securities such as owner trust certificates, that have predominantly debt characteristics, are not prohibited.

3.    Floating rate securities with an interest rate cap or collar, with the exception of those capped to comply with state usury laws.

4.    Floating rate securities the interest rate on which does not reset as a result of changes in one or more reference interest rates. Examples of prohibited floating rate securities are those whose interest rate reset is based on an index of commodities or equity securities.

5.    Futures contracts and options on futures contracts.

6.    Interest rate swap transactions where the Fund is a counterparty to the interest rate swap agreement.

7.    Mortgage pass-through certificates, collateralized mortgage obligations and real estate mortgage investment conduits (REMICs), where the underlying collateral is first mortgages on residential or commercial properties, except that Agency MBS (as defined below) will not be Prohibited Investments in connection with repurchase agreements as provided in paragraph G. Mortgage-backed securities where the underlying collateral is home equity loans are not Prohibited Investments.

8.    Any units of a common trust fund or collective trust fund of the type referred to in Section 3 (c) (3) or Section 3 (c) (11) of the 1940 Act.

9.    Any security which derives all or a portion of its value from another security or index (for example, structured notes, futures or swaps). Notwithstanding the

foregoing, a security that is a permissible investment for a money market fund shall not be a prohibited investment under this paragraph C.9.

**D.    LIMITATIONS ON AMOUNTS INVESTED/CASH RESERVE; PERMITTED BORROWING**

1.    The Fund will seek to be invested fully in Eligible Securities as of the close of business on each day.

2.    On a temporary basis, not to exceed seven days and solely for the purpose of liquidity, the Fund may enter into reverse repurchase agreements with respect to U.S. Government Securities. While any such reverse repurchase agreement is outstanding, the Fund shall not make additional term investments.

**E.    CONCENTRATION GUIDELINES**

1.    No more than 10% of the Fund's total assets, measured at the time of purchase, may be invested in the securities of a single issuer (other than U.S. Government Securities and Repurchase Agreements and the commingled vehicles identified in Paragraph B.1, as to which there is no limitation).

**F.    MATURITY GUIDELINES**

1.    Fixed rate instruments must have a final maturity at the time of purchase that does not exceed one year.

2.    The Fund's maximum dollar weighted average days to maturity may not exceed 90. For purposes of calculating the Fund's dollar weighted average days to maturity, the maturity of a given instrument shall be, in the case of: (i) a fixed rate instrument, the date noted on the face of the instrument as the date on which the principal amount must be paid, (ii) an instrument with an unconditional put or unconditional demand feature, the date on which the principal amount of the instrument can be recovered by demand, and (iii) a floating rate instrument, the next readjustment of the interest rate.

3.    Floating rate instruments which are U.S. Government Securities must have a Final Maturity not exceeding 5 years at the time of purchase and all other floating rate instruments must have a Final Maturity not exceeding 2 years at the time of purchase; provided that, if the maturity of a floating rate instrument is determined by reference to an unconditional put or unconditional demand feature, the period remaining between adjustments of the interest rate must not exceed the period specified in paragraph F.1.

4.    Final Maturity for purposes of these Guidelines means the date noted on the face of the instrument (or equivalent) as the date on which the principal amount must be paid.

5.    A repurchase agreement shall be deemed to have a maturity equal to the period remaining until the date on which the repurchase of the underlying securities is scheduled to occur or, where no date is specified but the agreement is subject to a demand for the repurchase of the securities, the notice period applicable to such demand.

6.    Adjustable rate mortgages shall have a maturity equal to the period remaining until the last principal payment is required to be paid by the terms of the underlying obligation.

7.    Shares of a money market mutual fund (a "money market fund") registered with the Securities and Exchange Commission as an investment company under the Investment Company Act of 1940, as amended (the "1940 Act") shall be deemed to have a Final Maturity of one day.


G.    **REPURCHASE AGREEMENTS (including term repurchase agreements, entered into using custodians deemed appropriate by JPMorgan Chase Bank)**

1.    **Permitted collateral:**

Bills, bonds or notes issued by the United States Treasury, or other securities guaranteed as to principal and interest by the Government of the United States, its agencies, instrumentalities or establishments; mortgage-backed securities sponsored by agencies of the Government of the United States; corporate obligations of domestic and foreign issuers with a minimum rating of AA- by Standard & Poor's Corporation ("S&P") or Aa3 by Moody's Investor Services, Inc. ("Moody's"); asset-backed securities with a minimum rating of AAA by S&P or Aaa by Moody's; or money market instruments (including, but not limited to, certificates of deposit, bank notes, deposit notes, banker's acceptances and commercial paper issued by domestic issuers with a minimum rating of A-1 by S&P and P-1 by Moody's).


H.    **QUALITY GUIDELINES**

Except as otherwise provided with respect to repurchase agreement collateral in paragraph G:

1.    Specified Rating Categories at time of purchase:

**Short-term:**   Short-term instruments must be rated any two of the following:  A-1 by S&P, P-1 by Moody's, F-1 by Fitch Ratings.

**Long-term:** Long-term instruments must be rated at least A- by S&P, A3 by Moody's, or A- by Fitch Ratings.

A security without its own rating will be considered to be rated if its issuer's comparable securities are rated with respect to: (i) a class of short-term debt obligations, in the case of short-term ratings, or (ii) a class of long-term debt obligations, in the case of long-term ratings, or any security within the relevant class that is comparable in priority and security with the purchased security.

Long-term ratings will be used only if the security is not rated and no security of the same issuer that is comparable in priority with such security is rated.

2.     The Fund may not purchase Eligible Securities based on an NRSRO's rating where that NRSRO has announced publicly that it is examining the rating for a possible downgrade.  This limitation does not apply to eligible securities rated A-1+ by Standard & Poor's Corporation.

*          *          *

*Each client should analyze these Guidelines continually to determine their continued appropriateness, recognizing that all investments bear risks and that the return of principal is not assured.*